Circuit Court for Prince George's County of Maryland

# IN THE ~~DISTRICT COURT OF MARYLAND~~ FOR PRINCE GEORGE'S COUNTY
### (Civil Division)

**JONATHAN T. ALSTON**
10912 Cedarhollow Lane
Largo, MD 20774

    Plaintiff,

v.

CIVIL ACTION NO. _CAL12-31117_

Jury Trial Demanded

**LHR, INC.**
56 Main Street
Hamburg, NY 14075

**Serve:** The Corporation Trust Incorporated
    351 West Camden Street
    Baltimore, MD 21201

    Defendant.

---

## COMPLAINT

    COMES NOW the Plaintiff, Jonathan T. Alston, (hereafter the "Plaintiff") and for his

complaint against the Defendant LHR, Inc. ("LHR") and alleges as follows:

### PRELIMINARY STATEMENT

    1.    This is an action for actual and statutory damages, costs and attorney's fees brought

pursuant to the Fair Credit Reporting Act (FCRA), Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et*

*seq.* (hereinafter "FDCPA"), and the common law tort of defamation.

Case: CAL12-31117
CV CLERK FEE-          80.00
MD LEGAL SERV          55.00
TOTAL          135.00
Rec# PG11     Rcpt # 76478
MHB     APH     Blk # 2573
Sep. 25, 2012          12:23 pm

### PARTIES

    2.    The plaintiff is a natural person and resides in Largo, Maryland. He is a "consumer"

as defined by the FDCPA, 15 U.S.C. §1692a(3) and a "person" as defined by FCRA, 15 U.S.C.

§1681a(c).

    3.    Defendant LHR operates as an accounts receivable management company

throughout the United States ~~and~~ including Maryland.



1


EXHIBIT
A

4.       Defendant regularly collects or attempts to collect debts owed or due or asserted to be owed or due another, and is a "debt collector" within the meaning of the FDCPA, as defined at 15 U.S.C. § 1692a(6). Defendant moreover use one or more instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of debt.

5.       ~~Plaintiff~~ LHR is a furnisher of information as contemplated by FCRA section 1681s-2(a) & (b), that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies.

## FACTS

6.       Mr. Alston initially received correspondence from the Defendant LHR on October 1, 2011. In the correspondence LHR claimed to have a purchased a debt from American Credit Company (the "Creditor"). The alleged debt allegedly purchased from the Creditor was for family, personal or household purposes and which meets the definition of a "debt" under 15 U.S.C. §1692a(5). LHR further stated in the correspondence that a balance of $4,371.43 was now owed to LHR as a result of the purchase of the debt.

7.       On October 4, 2011 at 10:45am Mr. Wolfe contacted Mr. Alston by telephone. At some point during the conversation Mr. Alston requested Mr. Wolfe to verify LHR owned the account. Mr. Wolfe responded by stating he was marking the account as a refusal to pay and abruptly "hanging up" the phone. At 10:51 Mr. Alston called Mr. Wolfe back to explain to him that similar letters from other debt collectors are being sent to his address about the same account and concluded by reiterating his request for verification. Mr. Wolfe said he would put in a special request that proof of the debt be sent to Mr. Alston.

8.       On or about October 10, 2011 Mr. Alston mailed LHR a letter requesting verification of the debt. In his letter Mr. Alston explained that he had received correspondence

from at least one other debt collector claiming to collect on the same debt. Mr. Alston requested

LHR send documents proving legal ownership of the debt or refrain from contacting him regarding

the debt. Mr. Alston also assured LHR payment would be made forthwith following LHR

providing the requested documentation.

9.     On October 17, 2011 at 10:45am Mr. Wolfe contacted Mr. Alston again by

telephone to inquire whether Mr. Alston received LHR's affidavit of ownership. Mr. Alston had

not received the affidavit and indicated so to Mr. Wolfe. Mr. Wolfe got angry and accused Mr.

Alston of lying about not receiving the affidavit. Mr. Wolfe further threatened to report the account

to the credit reporting agencies. Mr. Wolfe concluded the conversation by stating he is making a

note that Mr. Alston is stalling and then abruptly hung up as he sarcastically said "have a nice

day."

10.    On or about October 20, 2011 Mr. Alston received correspondence from LHR. The

correspondence consisted of a Statement of Account and an Affidavit. The Statement of Account

indicated that it was prepared on October 17, 2011 and that the balance on the account was

$4,345.00. The Affidavit was signed and/or executed by Laura Formaniak, who was identified as

the Litigation Manager. The Affidavit identified LHR as the Plaintiff and Mr. Alston as the

Defendant. The Affidavit further referenced attorney's fees, providing evidence to the court and

whether the Defendant, Mr. Alston, was on active duty in the armed forces.

11.    On October 19, 2011, the date the Affidavit was executed, LHR had not filed any

action against Mr. Alston. LHR was not a Plaintiff in a lawsuit against Mr. Alston. To date LHR

has not filed a lawsuit against Mr. Alston.

12.    LHR periodically continued to call Mr. Alston over the next six months.

13.    On April 25, 2012 at 8:12am LHR called Mr. Alston. Mr. Alston repeated his

concerns about the LHR's ability to assure him that it had legal ownership of the account. The

3

10/12/2012 11:36 FAX  7108443804                                                                    ☐0006/0047

female representative from LHR responded by becoming agitated and accused Mr. Alston of stalling. She transferred Mr. Alston to a supervisor. The supervisor told Mr. Alston that before he goes through all the work of getting proof he needs to make sure Mr. Alston agrees to pay. The conversation came to an end when the supervisor asked for Mr. Alston's social security number and Mr. Alston refused to provide it. The supervisor said he would have to end the conversation if Mr. Alston didn't confirm his social security number. Mr. Alston said it was "okay" to end the conversation. The supervisor concluded the conversation stating "I'm sure it is, I have seen your credit" as he abruptly "hung up."

14.     On July 7, 2012 Mr. Alston obtained his credit reports. Mr. Alston found that LHR initiated a hard pull of his credit report on October 4, 2012; initiated a soft pull of his credit report on August 22, 2012; and reported Mr. Alston delinquent on a debt to LHR in the amount of $4,345. Upon information and belief LHR has been reporting the account since October of 2011.

15.     On June 8, 2012 Mr. Alston disputed the account with credit reporting agencies. Upon information and belief the credit reporting agencies communicated the dispute to LHR. LHR confirmed the account as being accurately reported.

16.     On June 22, 2012 Mr. Alston decided to call LHR after seeing LHR's number on his caller id. Mr. Alston again advised LHR he was ready to pay if LHR would produce some legal documents assuring LHR had legal title and ownership of the debt. Mr. Alston specifically asked for a copy of the bill of sale or assignment or, in the alternative, an indemnification agreement protecting him from any future claims on the debt. Robert Henning, a self-identified director of LHR, said Mr. Alston would get a letter stating the account was paid in full and that would protect Mr. Alston from any claims on the account from another creditor or debt collector. He followed up by asking what Mr. Alston intended to do about the account. When Mr. Alston said he had to talk it over with his advisor Henning exclaimed "you're not going to take care of this today." After Mr.

Alston explained that he still had concerns regarding LHR legal ownership, Henning concluded the conversation by stating that the "balance is growing at 6% while you wait to take care of this matter."

17.    On July 9, 2012 LHR contacted Mr. Alston again by telephone. The LHR representative advised Mr. Alston that his earlier requested documents would not be provided and that he should not be concerned about those documents because he did not need those documents. The representative offered to have the account settled for $1,300.00. The representative also stated that the proof LHR owned the debt was established by the fact that the LHR account was being reported on Mr. Alston's credit reports. The representative demanded that Mr. Alston tell him what he intended on doing about the debt.

18.    On July 11, 2012 Mr. Alston sent a letter to LHR stating:

> I received numerous calls recently about paying a debt. I have tried to explain to the representatives that I am only willing to pay if LHR can sufficiently show it has legal ownership of the debt. I have even explained to the representatives that another debt collector has attempted to collect on this debt in the past. But they continue to ask me what I plan on doing with the debt. I plan on paying the debt. So please send me any and all of your documents substantiating this debt.

19.    Since Mr. Alston's July 11, 2012 letter he has not communicated with LHR. Upon information and belief LHR has not attempted to call Mr. Alston since receiving the July 11, 2012 letter.

20.    Based upon the circumstances of LHR's instructions to Equifax, Mr. Alston believes that inaccurate Equifax credit reports were published to A&H Motors on April 21, 2012; AT&T Services, Inc. on February 11, 2012; Capital One on April 21, 2012; Flagship Credit Acceptance on April 21, 2012; and Regional Acceptance on April 21, 2012.

21.    As a result of LHR's inaccurate and negative reporting to Equifax Mr. Alston had several applications for credit denied.

## COUNT ONE: VIOLATIONS OF FDCPA

22.    Plaintiff realleges and incorporates paragraphs 1 through 21 above as if fully set out herein.

23.    Defendants violated 15 U.S.C. §1692 in one or more of the following ways, without limitation by:

    a.    Falsely representing it purchased Plaintiff's account in violation of §1692e;

    b.    Falsely representing Plaintiff had a debt with Defendant in the amount of $4,371.43 in violation of §1692e;

    c.    Harassing and abusing the Plaintiff with condescending remarks and acts, threats, intimidation and other pressuring tactics in violation of §1692d;

    d.    Executing an affidavit that would cause the "least sophisticated consumer" to believe that the Defendant had filed or was going to file a lawsuit against the Plaintiff in violation of §1692e;

    e.    Misrepresenting that a letter would legally protect Plaintiff from future claims against him regarding the debt in violation of §1692e & f;

    f.    Unconscionably advising Plaintiff that he not worry about obtaining documents proving LHR owned the debt in violation of §1692f; and

    g.    Misrepresenting that an account being reported to a credit reporting agency was proof that the reporting creditor owned the account in violation of §1692e.

24.    As a result of the conduct and actions of Defendant, the Plaintiff suffered actual damages including without limitation, by example only and as described herein by Plaintiff: out-of-pocket expenses, frustration, upset, anger, humiliation and severe emotional and mental distress.

25.    Defendant's conduct was the proximate cause of Plaintiff's injuries, rendering Defendant liable for actual damages in an amount to be determined by the court pursuant to 15 U.S.C. §1692k(a)(1), statutory damages pursuant to 15 U.S.C. §1692k(a)(2)(A), and reasonable attorney's fees pursuant to 15 U.S.C. §1692k(a)(3).

## COUNT TWO: VIOLATIONS OF FCRA

26.    Plaintiff realleges and incorporates paragraphs 1 through 25 above as if fully set out herein.

27.    LHR both negligently and intentionally violated the Fair Credit Reporting Act at 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct a reasonable investigation. .

28.    LHR knew or should have known during its investigations that it did not have legal ownership of an account belonging to Plaintiff. LHR knew Plaintiff was willing to pay the debt upon proof that LHR held legal title to the account. Rather than modifying or deleting the account to reflect the fact that LHR did not have legal ownership of the account, LHR continued to report the account as delinquent in attempt to extort a payment from Plaintiff. Said actions of LHR were done negligently or with a reckless disregard for Plaintiff's rights also under the FCRA at §1681s-2(b)(1)(D) & (E).

29.    As a result of conduct, actions and inactions of LHR, the Plaintiff suffered actual damages including without limitation, by example only and as described herein by Plaintiff: out-of-pocket costs, loss of credit, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

7

10/12/2012 11:37 FAX  7168443804                                                      ☒0010/0047

30.     LHR's conduct, actions and inactions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, LHR was negligent, entitling the Plaintiff to recover under 15 U.S.C. §1681o.

31.     The Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorneys' fees from LHR in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT THREE: DEFAMATION

32.     Plaintiff realleges and incorporates paragraphs 1 through 31 above as if fully set out herein.

33.     LHR intentionally and maliciously instructed Equifax, Experian and Transunion (collectively, the "CRAs") to report publicly that Plaintiff had a delinquent account with LHR.

34.     LHR's statements to the CRAs were false.

35.     LHR published the statements without a privilege.

36.     As a result of Defendant's publication, Plaintiff's credit score was reduced, credit applications were denied, and credit opportunities were lost. Plaintiff has also suffered substantial, actual damages including but not limited to: out-pocket expenses, frustration, upset, humiliation and embarrassment, emotional and mental pain and suffering.

37.     Defendant's conduct was the proximate cause of Plaintiff's injuries, rendering Defendant liable for compensatory damages.

WHEREFORE, your Plaintiff demands judgment for actual and punitive damages against Defendants; for his attorney's fees and costs; for prejudgment and post-judgment interest at the legal rate, and such other relief as the Court deems just, equitable and proper.

8

TRIAL BY JURY DEMANDED

**JONATHAN T. ALSTON**

By _____

Jonathan T. Alston
10012 Cedarhollow Lane
Largo, MD 20774
(240) 432-0927
*Pro Se*